IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL BELLINGHIERE, )
)
    Plaintiff-Claimant, )
) No. 10 C 6184
vs. )
) Jeffrey T. Gilbert
MICHAEL J. ASTRUE, Commissioner ) Magistrate Judge
of Social Security, )
)
    Defendant-Respondent. )

## MEMORANDUM OPINION AND ORDER

Claimant Paul Bellinghiere ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Respondent Michael J. Astrue, Commissioner of Social Security ("Commissioner"), in which the Commissioner denied Claimant's application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment [Dkt.##12, 19]. Claimant argues that the Commissioner's decision denying his application for disability insurance benefits should be reversed and/or that the case should be remanded for further proceedings. Claimant raises the following issues in support of his motion: (1) whether the ALJ properly considered evidence of Claimant's treating physicians' opinions; (2) whether the ALJ's credibility finding regarding Claimant's testimony was improper; and (3) whether the ALJ properly posed a complete hypothetical to the vocational expert. For the reasons set forth below, Claimant's motion for summary judgment [Dkt.#12] is granted, and the Commissioner's motion [Dkt.#19] is denied. The decision of the Commissioner of Social Security is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

# I. BACKGROUND

## A. Procedural History

Claimant filed an application for disability benefits on March 22, 2007, alleging a disability onset date of November 21, 2005. R.38. Claimant's date last insured was December 31, 2010.[1] R.38. The Social Security Administration ("SSA") initially denied his application on May 11, 2007 and again denied the claim upon reconsideration on August 2, 2007. R.38, 55, 56. Claimant then filed a written request on September 20, 2007 for a hearing before an Administrative Law Judge ("ALJ"). R.38, 69-74. Claimant appeared with counsel and testified at a hearing held on October 6, 2009. R.1-19, 38. Vocational expert Lee Knutson also appeared and testified at the hearing. R.19-23, 38. No medical expert testified at the hearing.

On October 26, 2009, the ALJ rendered a decision finding that Claimant was not disabled under the Social Security Act. R.35-54. Specifically, the ALJ determined that Claimant "had the residual capacity to perform light work defined in 20 C.F.R. § 404.1567(b) except: Claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; claimant can frequently balance; claimant can occasionally stoop, kneel, crouch, and crawl; claimant cannot reach overhead; claimant can occasionally reach in all other directions." R.42.

On November 2, 2009, Claimant filed a request for review of the ALJ's decision with the Appeals Council. R.33-34. On July 28, 2020, the Appeals Council denied review, making the

---

[1] Because Social Security disability benefits under Title II is insurance against lost income caused by disability, the applicant/worker must show a recent connection to the work force to maintain insured status. 42 U.S.C. § 423(c) and 20 C.F.R. § 404.130. This generally means the applicant was working in 20 of the last 40 quarters. For an applicant who is 31 years old or older, the "last date of insured status" generally is five years after his or her date of last work.

ALJ's decision the final decision of the Commissioner. R.24-28. Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

**B.     Hearing Testimony -- October 6, 2009**

   **1.     Paul Bellinghiere -- Claimant**

At the time of the hearing, Claimant was 44 years old, married, and living with his wife. R.8. Claimant completed education through the 12th grade and has past relevant work experience as an insulator. R.8. Claimant was injured on the job on November 21, 2005 and has not worked since the injury. R.6. Claimant had emergency back surgery in November 2005 but still reports experiencing pain and that his condition did not improve after surgery. R.6, 9.

During the hearing, Claimant explained that he suffers from constant back and leg pain and is unable to work. R.9-12. Claimant testified that it is difficult for him to stand or sit for long periods of time. R.10. He stated that he can walk for 20 minutes before he has to sit down (R.11), and he has difficulty bending, stopping and squatting. R.13. Claimant also testified that he has pain in his shoulder, and he has trouble reaching over his head. R.13. Claimant stated that the pain becomes progressively worse throughout the day, and ultimately, he has to lay down to relive the pain. R.12. Claimant stated he takes Percocet and Lyrica to alleviate the pain. R.10. Claimant testified that the medication takes the "edge off," but the pain is not completely alleviated. R.10. He testified that his sleep is disrupted because of the pain, and he has not been able to sleep through the night since his injury. R.11.

Claimant testified he is able to care for his personal hygiene so long as he doesn't have to stand for a long period of time. R.15. Claimant reported that he does not perform any household chores such as cleaning, cooking and laundry. R.15-17. Claimant testified that he has spent "95

percent of [his] days in the last four years in bed." R.12. Claimant testified that other than visiting his mother sometimes and going fishing with his brothers a couple of time a month, he doesn't doing anything during the day except for lay in bed and watch television. R.15-16. While fishing, Claimant stated that cannot cast a fishing pole and that he only can last a couple hours before he has to stop. R.16-17. He testified that he can lift a bag of groceries, maybe 10 pounds, but nothing heavier. R.14.

Claimant testified that he participated in physical therapy for his back. R.17. He also testified that the next step would be a fusion procedure but that the doctors disagree about how many disks should be fused. R.17. Claimant testified that one of his doctors stated that "there's not even a 50 percent chance that [he'll] ever get better." R.17. As a result, Claimant testified that he does not want to have the surgery because he is unsure about the results. R.17-18.

　　　　2.　　　　**Lee Knutson -- Vocational Expert ("VE")**

The VE described Claimant's past relevant work as an insulation worker, construction, which he categorized as heavy work and skilled. R.21. While questioning the VE, the ALJ asked whether a 44-year old individual with the same education and past work experience as Claimant could perform his past relevant work if he had the residual functional capacity to perform light work, except that: he can occasionally climb ramps, stairs and should never climb ladders, ropes, and scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; and he can occasionally perform activities, reaching activities forward and below shoulder level, but he cannot perform any work activity requiring overhead reaching. R.21. The VE testified that, based on the hypothetical given by the ALJ, an individual with the limitations described could not perform his past work. R.21.

4

The ALJ then changed the hypothetical to assume an individual capable of performing sedentary work with the ability to alternate sitting and standing every two hours for about five to ten minutes. R.21-22. The VE testified that there would be jobs that Claimant could perform. R.22. The ALJ again changed the hypothetical to assume that an individual would need to alternate sitting and standing every 20 minutes, and the VE responded that there would not be any jobs because the individual would have to be off task more than 20 percent of the work day. R.22.

C.  Medical Evidence[2]

### 1.  Dr. Tamir Hersonskey -- Claimant's Treating Neurosurgeon

Claimant sought treatment from Dr. Hersonskey from November 2005 through sometime in approximately March 2007. Dr. Hersonskey performed emergency back surgery on Claimant on November 23, 2005. R.230. In a progress note dated August 11, 2006, Dr. Hersonskey stated Claimant still reported experiencing pain and that his condition had not improved. R.250. Dr. Hersonskey noted that Claimant has "a combination of axial and radicular pain." R.250. He stated that radicular pain can be explained "by the fact that there is still small amount of disk putting pressure on the nerve root on the left side." Dr. Hersonskey also stated that surgery should relieve some of the pain. R.250. However, Dr. Hersonskey also noted that the surgery "is not always the best solution for" axial pain, "especially when the area has been operated on" and

---

[2] In light of the fact that this matter is remanded to the SSA for further development of the record consistent with this Memorandum Opinion and Order, we do not discuss all of the medical evidence submitted by Claimant and instead only address the medical evidence relevant for purposes of this Opinion.

there is scar tissue. R.250. That same month, Dr. Hersonskey prescribed physical therapy for evaluation and treatment for three months. R.251.

On October 20, 2006, Dr. Hersonskey provided a note for Claimant that he could return to work on light duty with no lifting over 10-15 pounds and no prolonged standing, sitting, or walking. R.372. However, three months later on December 19, 2006, Dr. Hersonskey stated that Claimant should remain off work until further notice. R.274. On March 20, 2007, Dr. Hersonskey indicated in a progress note that Claimant might have "mechanical back pain" that would benefit from a lumbar fusion operation but noted that Claimant would like to continue with physical therapy. R.747.

**2. Dr. Samir Sharma -- Claimant's Treating Pain Specialist**

Claimant sought treatment from Dr. Sharma for pain management beginning May 14, 2007. Claimant continues to see Dr. Sharma once every two months. R.8-9. The record shows that treatment primarily is a status check of Claimant's prescription medication which includes Lyrica for nerve stabilization and Norco for pain management and in addition a Lipoderm patch and Neurotin on occasion. R.822-851. In a report dated September 30, 2009, Dr. Sharma opined that Claimant has chronic low back pain, spinal osteoarthritis and radiculopathy. R.886-887. Dr. Sharma further opines that Claimant is limited to sitting, standing and walking for 30 minutes with a change in position and limited to lifting no more than 30 pounds and no bending, stooping or crawling. R.886-887.

**3. Dr. Jerry Bertolini -- Claimant's Treating Orthopedist**

The record shows that Claimant sought treatment from Dr. Bertolini beginning in September 2007 for bilateral shoulder pain, primarily in his right shoulder. R854. Claimant

6

reported that he had a limited range of motion in his right shoulder. R.854. X-rays indicated that Claimant has osteoarthritis with a bone spur in his right shoulder, and Dr. Bertolini prescribed physical therapy for Claimant. R.854. Dr. Bertolini's notes indicate that Claimant's range of motion improved with therapy (R.852-853) but that Claimant wanted to stop physical therapy because it was not helping. R.855. In his October 16, 2007 progress notes, Dr. Bertolini reported that Claimant's left shoulder had full range of motion but that he still had limited range of motion and constant pain in his right shoulder. R. 853. In a letter dated May 26, 2009, Dr. Bertolini opined that Claimant is "unable to perform his job because of decreased function and moderate to severe osteoarthritis of the right shoulder." R.871. Dr. Bertolini stated that Claimant has "limited use of the right arm as well as limited strength." R.871.

### 4. State Agency Reviewing Physicians

On May 8, 2007, Dr. Frank Norbury, a non-examining physician, reviewed Claimant's medical record on behalf of the SSA. R.784-791. While acknowledging that Claimant had a back injury and pain radiating to the left leg, Dr. Norbury concluded that Claimant was capable of light work with the certain limitations including that he occasionally can lift 20 pounds and frequently lift 10 pounds; sit, stand or walk with normal breaks for 6 hours in an 8-hour work day; frequently balance; and occasionally climb, stoop, kneel, crouch, and crawl. R.786-786. Two months later on July 31, 2007, reviewing physician Dr. Richard Bilinsky affirmed Dr. Norbury's conclusions. R.802-804.

## D.     The ALJ's Decision -- October 26, 2009

After a hearing and review of the medical evidence, the ALJ determined Claimant did not have the residual functional capacity ("RFC")[3] to perform his past relevant work but that he did have the capacity to perform light work and, therefore, denied his application for disability insurance benefits. R.42. The ALJ evaluated Claimant's application under the required five-step sequential analysis. R.39-42. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since November 21, 2005, the alleged disability onset date. R.40. At step two, the ALJ determined Claimant had the following severe impairments: mild back disorder and impingement syndrome of right shoulder. R.40. At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R.41. The ALJ then proceeded to consider Claimant's RFC and found Claimant capable of performing light work,[4] except: "Claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; claimant can frequently balance; claimant can occasionally stoop, kneel, crouch, and crawl; claimant cannot reach overhead; claimant can occasionally reach in all other directions." R.42.

After purportedly considering all relevant evidence, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements regarding "the intensity, persistence, and limiting effects of [those] symptoms are not credible to the extent they are inconsistent with the above residual

---

[3] The RFC is the most that a claimant can do despite the effects of his impairments. 20 C.F.R. § 404.1545(a).

[4] Light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds and a "good deal" of walking/standing, or sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

functional capacity assessment." R.43. The ALJ found that the medical evidence did not support a finding that Claimant's complaints of back pain are more than moderate. R.46. The ALJ also noted that Claimant has refused surgery despite a recommendation from his neurosurgeon. R. 47. In addition, the ALJ noted that Claimant had chosen to manage his back and leg pain with medication and had refused continued physical therapy for his shoulder. R.47. Based on this chosen course of treatment, the ALJ concluded that Claimant's level of pain is not commensurate with a more limiting functional capacity. R.48.

At step four, the ALJ concluded Claimant could not perform his past relevant work as an insulator. R.48. At step five, the ALJ considered Claimant's age, education, work experience and RFC and determined that there are jobs that exist in the national economy that Claimant can perform. R.48. Therefore, the ALJ concluded that Claimant was not disabled under the Social Security Act. R.49.

## II. LEGAL STANDARD

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.     Disability Standard**

Disability insurance benefits are available to a claimant who can establish he is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . .

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. DISCUSSION

Claimant raises the following issues in support of his motion: (1) whether the ALJ properly considered evidence of Claimant's treating physicians' opinions and failed to give them controlling weight; (2) whether the ALJ's finding regarding Claimant's credibility was improper; and (3) whether the ALJ properly posed a complete hypothetical to the vocational expert.

11

### A. The ALJ's Decision To Reject Opinion Evidence From Claimant's Treating Physicians Is Not Supported by the Record

An ALJ makes a RFC determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. In doing so, she must determine what weight to give the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527. The ALJ also must consider to what extent the claimant's symptom reports are substantiated by the other evidence of record. 20 C.F.R. § 404.1529. Claimant argues that the ALJ in this case made an erroneous "light" RFC finding by improperly rejecting the findings of Claimant's treating physicians.

A treating physician's opinion is entitled to controlling weight if it is supported by the medical findings and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). However, so long as the ALJ "minimally articulates [her] reasons," she may discount a treating physician's opinion if it is inconsistent with that of a consulting physician or other substantial medical evidence. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer controlling but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). However, when an ALJ fails to credit a treating physician's opinion, she must at least minimally discuss the reasons why. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001).

In this case, the ALJ rejected or discounted the opinions of two treating physicians – Dr. Sharma and Dr. Bertolini. With regard to Dr. Sharma, the ALJ determined that his "opinion is not entitled to controlling or great probative weight because it is internally inconsistent, is not supported by objective medical evidence, and is inconsistent with other substantial evidence of record." R.47. The ALJ attempted to explain why she rejected Dr. Sharma's opinion and pointed

to some evidence in the record to support her decision to give less weight to Dr. Sharma's opinion. The ALJ's explanation, however, falls short under the applicable legal standard.

In rejecting Dr. Sharma's opinion, the ALJ relied on the opinions of the state agency physicians. R.47. However, neither of the state agency physicians reviewed any of the medical records from Dr. Sharma. Claimant submitted additional medical evidence in this case well after the agency reviews were conducted, including the records and opinions of both Drs. Sharma and Bertolini whose treatment history for plaintiff dated from 2007 through the date of the hearing in 2009. R.805-888. Therefore, the state agency physicians' assessments do not, by definition, take into account all of the medical evidence in the record.

In addition, the ALJ does not cite any medical evidence to support her finding that it is inconsistent for a person to be able to lift 30 pounds and only be able to sit for less than 30 minutes. On a common sense level, the ALJ does not even articulate why it is inconsistent for a person to have the arm or upper body strength sufficient to lift 30 pounds but not be able to sit for more than 30 minutes. Courts have held that "an ALJ must not substitute [her] own judgment for a physician's opinion with relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 87 (7th Cir. 2000). Without any medical evidence to support her decision to reject Dr. Sharma's opinion, we must conclude the ALJ impermissibly substituted her judgment for that of Claimant's treating physician.[5]

---

[5] In his response brief, the Commissioner cites to a functional capacity evaluation performed by Brent Huff, a functional capacity assessment specialist at ATI physical therapy, in which Huff concluded that Claimant had the capacity to work at the medium to heavy physical demand level, as support for the ALJ's decision to reject Dr. Sharma's opinion. Commissioner's Resp. Br. [Dkt#20], at 6. That argument, however, is somewhat disingenuous. It is true that the ALJ did say in her opinion that Huff's functional capacity evaluation did, in fact, support her decision. The ALJ, however, also specifically stated that the evaluation "is not given much

In regard to Dr. Bertolini's opinion, again neither of the state agency physicians reviewed any records from Dr. Bertolini when evaluating Claimant's residual functional capacity. Although the ALJ agreed with Dr. Bertolini that Claimant could not perform his past work, the ALJ disagreed with Dr. Bertolini's assessment to the extent that it was inconsistent with the ALJ's articulation of Claimant's RFC and instead found that Claimant could perform light work with the limitation set forth in the RFC. R.42. That RFC, however, includes that Claimant cannot reach overhead and occasionally can reach in all other directions (R.42), which is inconsistent with Dr. Bertolini's opinion that Claimant has limited range of motion in his right shoulder. R.871. Although the ALJ points to the state agency physicians' determinations to support her RFC finding, as discussed above, the state agency physicians did not have Dr. Bertolini's records when they performed the physical residual functional capacity assessment and found that Claimant did not have any manipulative or upper extremity limitations. R.787.

In this situation, the ALJ could have brought in a medical expert to testify at the hearing or sent Claimant out for a consultative exam. At a minimum, the ALJ could have requested another state agency review in light of the new evidence submitted by Claimant, which would have included a review of the records and opinions of Drs. Sharma and Bertolini, Claimant's treating physicians. The ALJ, however, did none of these things. Therefore, the medical opinions relied upon by the ALJ to contradict the opinion of Claimant's treating physicians were not based on a complete review or an accurate summary of all the relevant medical evidence. As

---

probative weight as it is somewhat optimistic, dated and comes from a non-medical source." R.46. Accordingly, we are reluctant to point to Mr. Huff's assessment as record support for the ALJ's decision to reject Dr. Sharma's opinion as Claimant's treating physician given the ALJ's characterization of the weight she gave to Huff's assessment in her own analysis.

a result, without sufficient medical evidence to support her decision to reject Claimant's treating physicians' opinions, we conclude that the ALJ impermissibly substituted her judgment for that of Claimant's treating physicians. These errors necessitate a remand so that the ALJ can more fully explain her analysis and conclusions or more fully develop the record along the lines discussed herein.

**B.       On Remand, the ALJ Should Revisit the Issue of Claimant's Credibility**

When faced with a claimant alleging subjective pain symptoms, an ALJ must evaluate the credibility of a claimant's testimony about his pain. SSR 96-7p. The ALJ must consider the claimant's testimony and statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms in light of the entire record and be "sufficiently specific" as to the reasons for his credibility determination. *Id.* Because pain is experienced differently by different people, allegations of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). The ALJ is required to consider the extent to which symptom reports of pain are consistent with the other evidence, including lab findings, objective testing, treatment history, and activities of daily living. 20 C.F.R. § 404.1529(a) & (c). The ALJ also must set forth a logical explanation of why symptom-related limitations can or cannot be reasonably accepted in light of the medical evidence. SSR 96-8p.

The ALJ is in the best position to determine the credibility of witnesses, and this Court reviews that determination deferentially. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). The ALJ has the discretion to discount testimony on the basis of evidence in the record. *Johnson v. Barnhart*, 449 F.3d 431,

435-36 (7th Cir. 2000). However, the basis for the ALJ's credibility determination must be articulated and "sufficiently specific" to make clear to a claimant and subsequent reviewers the weight given to a claimant's statements and the reasons for the weight given. SSR 96-7p.

Here, the ALJ failed to specifically evaluate the purported persistence and intensity of Claimant's self-reported back and leg pain. The ALJ's opinion summarized the objective medical evidence; it also identified Claimant's testimony as to his alleged pain and trouble performing daily activities. R.43. Then, without any explanation, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that are inconsistent with the above residual functional capacity assessment." R.43. Nowhere did the ALJ draw a direct connection between the facts of record and her conclusions, or as the courts have said "build an accurate and logical bridge from the evidence to the conclusion." *Berger*, 516 F.3d at 544.

The ALJ did not address any of Claimant's testimony about his pain in conjunction with her analysis of the medical evidence. That is a problem in the ALJ's analysis. Claimant's testimony is contrary to the ALJ's conclusion that Claimant has the ability to perform light work. The ALJ concluded that Claimant was not entirely credible on this point but did not identify or discuss any evidence that led her to reach that conclusion. An ALJ is required to cite specific reasons for rejecting Claimant's testimony about his pain. SSR 96-7p. That was not done here. Because the ALJ did not engage in any further discussion of Claimant's limitations due to his constant pain, she missed a crucial piece of the bridge that must be built to support her conclusion to reject Claimant's treating physicians opinions well as her ultimate determination as to Claimant's RFC.

The sole support given by the ALJ for her decision to reject Claimant's subjective reports of persistent pain appears to be that Claimant had opted not to have further surgery and, instead, has chosen to manage his pain with medication. R.47-48. Specifically, the ALJ stated that Claimant "has refused surgery despite recommendations from his neurosurgeon as well as a professor of spinal reconstruction surgery. He has chosen instead to manage his alleged disabling level of back and leg pain with medications for years and has refused physical therapy for his shoulder, which indicates levels of pain that are not more limiting to the claimant's functional capacity than that which [the ALJ] assess[es] in [her] decision." R.47-48. However, SSR 96-7p provides that an ALJ "must not draw inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanation that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatments." SSR 96-7p.

Here, the longitudinal record shows that Claimant consistently has pursued medical treatment since his injury. He had back surgery in 2005, has tried physical therapy and now is managing his pain with medication. The ALJ minimally inquired of Claimant why he was not pursuing other options, and Claimant explained that his doctor told him that "there's not even a 50 percent chance" he will improve with more surgery. R.17. Here, the ALJ explicitly drew inferences about Claimant's pain and functional limitations from his decision not to pursue more surgery.[6] There is no evidence that the ALJ considered Claimant's explanation for his decision

---

[6] The ALJ, in her opinion, recognized that another doctor, Dr. Mirkovic, had performed an independent evaluation of Claimant and recommended that Claimant "udergo lumbar discograms ... in order to plan possible surgery." R.45. Dr. Mirkovic also opined that Claimant

17

not to have further surgery, and the ALJ explicitly failed to inquire about Claimant's discontinuation of physical therapy. Thus, the record is undeveloped in this area and the ALJ failed to build the requisite logical bridge for her decision to reject Clamant's subjective reports of pain.

Thus, for all of these reasons, it is necessary to remand the case to allow the ALJ further opportunity to explain the basis for her adverse credibility determination and, possibly, to further develop the record.

C. **The ALJ's Hypothetical to the Vocational Expert Was Based Upon An Insufficient RFC Finding**

Claimant contends that because the ALJ erred in assessing the medical evidence, specifically the opinions of his treating physicians and his subjective pain, when calculating his RFC, the ALJ's hypotheticals to the VE were flawed factually with regard to his RFC. In such a situation, when the ALJ's hypothetical to the VE is based upon an insufficient RFC, the case must be remanded to the SSA for further proceedings. *Young v. Barnhart*, 362 F.3d 995, 1004-05 (7th Cir. 2004).

Here, the ALJ's hypotheticals to the VE clearly were based on the state agency physicians' RFC assessment – *i.e.*, limiting Claimant to light work except that he can climb, stoop, kneel, crouch, and crawl occasionally; balance frequently; cannot reach overhead; and can reach in all other directions occasionally. R.42. For the reasons discussed in Sections A and B of this Memorandum Opinion, *supra*, the ALJ failed to account for all of the relevant evidence in

---

"may benefit from L4-5 stabilization in the form of an L4-5 fusion and instrumentation." In addition, notes from an outpatient visit with Dr. Sharma indicate that Claimant "underwent lumbar discogram of which surgical intervention was recommended. At this time, patient does not want to pursue further posterior fusion." R.839.

18

making her RFC finding. Specifically, the ALJ's RFC does not take into account Claimant's subjective testimony about pain and the opinions of Claimant's treating physicians. Because we find the ALJ improperly rejected that evidence, we find that the RFC was insufficient on this record. In light of that conclusion, the hypotheticals posed to the VE based on the ALJ's RFC finding also must be reconsidered in light of any new findings made on remand.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant Paul Bellinghiere's motion for summary judgment [Dkt.#12] is granted, and the Commissioner's motion [Dkt.#19] is denied. The decision of the Commissioner of Social Security is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 22, 2011